**Edward T. HAMMER, Plaintiff,**

v.

**U.S. DEPARTMENT OF EDUCATION, Suffolk University, Marist College, and Suny Brockport, Defendants.**

No. CV 99–2973.

United States District Court,
E.D. New York.

March 3, 2000.

Edward T. Hammer, Garden City, NY, for Plaintiff Pro Se.

Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, NY, by Michael J. Goldberger, Assistant United States Attorney, for Defendant U.S. Department of Education.

Foley, Hoag & Eliot, LLP, Boston, MA, by Pamela B. Blatte, Of Counsel, for Defendant Suffolk University.

Corbally, Gartland & Rappleyea, Poughkeepsie, NY, by Paul O. Sullivan, Of Counsel, for Defendant Marist College.

Elliot Spitzer, Attorney General of the State of New York, Mineola, NY, by Dorothy Oehler Nese, Assistant Attorney General, for Defendant SUNY Brockport.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On May 25, 1999, the plaintiff *pro se* filed a complaint against the defendants U.S. Department of Education (the "Department"), Suffolk University ("Suffolk"), Marist College ("Marist") and SUNY Brockport ("Brockport") (collectively, the "defendants"). While it is difficult to discern from the two page complaint, it appears that the plaintiff contends that his civil rights were violated when Suffolk, Marist and Brockport failed to provide proper academic counseling in response to his unspecified learning disability. With regard to the Department, it appears that the plaintiff claims that his civil rights were violated when the Department dismissed three administrative claims filed in connection with the failure to provide academic counseling. The Court interprets the complaint as alleging violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Title II of the American with Disabilities Act, 42 U.S.C. § 12132 ("ADA").

Presently before the Court are the defendants separately filed motions to dismiss.

## I. BACKGROUND

Unless otherwise stated, the following facts are from the plaintiff's complaint. It should be noted at the outset that while the plaintiff claims he is "disabled," there is no indication in the complaint as to the nature or extent of the disability.

Sometime in 1994, the plaintiff was enrolled at Suffolk University. While there, Professor Manning suggested to the plaintiff that he take her Sociology course. The plaintiff failed the course. Based on Professor Manning's suggestion, the plaintiff claims that his civil rights were violated.

In 1995, the plaintiff was enrolled at Marist College. The plaintiff was permitted to take Micro and Macro Economics simultaneously. Because the plaintiff's advisor did not intervene and permitted him to take both courses, he now claims that "[i]ncorrect advisement with no forethought is contrary to the spirit of the statutes for disabled students."

In 1996, the plaintiff filed a complaint with President Clinton indicating that he was not given proper counseling for his disability as was promised under the Rehabilitation Act and the ADA. The plaintiff did not receive a response from the Office of Civil Rights ("OCR") until 1998.

In July, 1997, the plaintiff was enrolled at SUNY Brockport. The plaintiff claims that during orientation he was advised that he should take pre-calculus. As a result, the plaintiff contends that he studied so hard for pre-calculus, that he neglected his other courses. As a result of failing his classes, the plaintiff was dismissed by the University. The plaintiff submits that he was not afforded an opportunity to "explain his dilemma" prior to being dismissed.

On an unidentified date, the plaintiff's father, Thomas Hammer, wrote to Dr. Paul Fairley of the OCR. "My main complaint was Ed was not given the counseling described in the federal statutes, thereby, causing Ed to fend for himself, subsequently picking course[s] he thought logical but became failed courses. In conclusion, the OCR made a decision of Ed's merit for pursuing the complaint was denied on the basis of a telephone conversation with me, T. Hammer, over the phone. Phone conversations only elicit supposition, not facts. They violated Section 504 and the ADA." By denying the plaintiff's complaints, he argues that the Department violated his civil rights.

## II. DISCUSSION

### A. *The Representation Issue*

It is well settled in this Circuit that "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir.1990). This rule was applied more recently by the Second Circuit in *Wenger v. Canastota Central School District*, 146 F.3d 123 (2d Cir.1998). In *Wenger*, the District Court granted summary judgment in favor of the defendants in a suit brought under the IDEA, Rehabilitation Act and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The complaint was brought by Wenger on behalf of his son Steven Wenger and alleged that the school district failed to provide Steven with appropriate special education services. The Second Circuit vacated the judgment as it was apparent that Steven was being represented by his non-attorney father. On remand, the Second Circuit advised the District Court to consider whether the appointment of counsel is necessary. The Court concluded that "[i]n the event the court concludes that counsel should not be appointed for Steven Wenger, and assuming that Mr. Wenger is unable on his own to find an attorney to represent his son, the court should dismiss the claims brought on Steven's behalf

without prejudice." *Id.* at 125 (citing *Cheung,* 906 F.2d at 62).

While the complaint is signed by the plaintiff, Edward T. Hammer, it is abundantly clear that the complaint was drafted and filed by Thomas Hammer, the father of Edward. In addition, other correspondence and submissions to the Court make it readily apparent that Thomas Hammer, who is not an attorney, is representing his son in this action. For example, the following excerpts are from the plaintiff's complaint:

> The U.S. Department of Education when in 1996, I filed a complaint with President Clinton indicating my learning disabled son, Edward Hammer was not given the counseling he was promised . . . .
>
> I didn't hear from the Office of Civil Rights . . . so I wrote to Dr. Paul Fairley . . . .
>
> My main complaint was Ed was not given the counseling described in the federal statutes, thereby causing Ed to fend for himself . . . .
>
> . . . the OCR made a decision of Ed's merit for pursuing the complaint . . . was denied on the basis of a telephone conversation with me, T. Hammer . . . .
>
> My wife, Mary, pleaded with . . . Ed's advisor not to let him do it.
>
> When my son Ed was academically dismissed by the college, they gave him no opportunity to explain his dilemma.
>
> On his arrival home . . . Ed was deeply depressed and I feared he might harm himself.

(Plaintiff's Complaint) (emphasis added).

In addition, a letter dated October 3, 1999, to the Court from Thomas Hammer indicates that he is representing his son, Edward. In the letter, Thomas Hammer wrote "I filed this suit at the Pro Se clerk's office." Furthermore, the plaintiff's opposition to the defendants' motion to dismiss provides further evidence that Thomas Hammer is representing his son. For example, the opposition states:

> The only assistance I gave my son was in the aid for and LD student . . . .
>
> The enclosed . . . is my way of saying my son's equal rights under the Constitution are just as important as yours . . . .
>
> The Secretary of Education [denied] me access to my son's records.

(Plaintiff's Opposition to Defendants' Motion to Dismiss) (emphasis added).

It is clear from the plaintiff's complaint, correspondence with the Court, and the plaintiff's opposition to the defendants' motion to dismiss, that Thomas Hammer is presently representing his son, Edward. The complaint is replete with references to Thomas Hammer in the first person singular, and Edward Hammer in the third person singular. Pursuant to the Second Circuit's decisions in *Wenger* and *Cheung,* the Court cannot permit Thomas Hammer, the father of the plaintiff, who is not an admitted attorney, to represent his son. As a result, the Court will give the plaintiff Edward Hammer 60 days to either find an attorney to represent him or to represent to this Court in a letter that he is capable and wants to represent himself *pro se.* In the event that Edward Hammer is both unable to locate counsel and does not seek to represent himself *pro se,* a request for *pro bono* counsel may be made to this Court. However, it should be noted, that if the Court finds that *pro bono* counsel is not warranted and that Edward Hammer does not want to or cannot represent himself, the Court, in accordance with *Wenger,* will dismiss the complaint, without prejudice.

Finally, the Court cautions Thomas Hammer that he shall desist from further representing his son in this matter. The Court will not accept a letter from Edward Hammer declaring that he seeks to represent himself, that is obviously written by his father, Thomas.

## III. CONCLUSION

Based on the foregoing, it is hereby

ORDERED, that the defendants' motions to dismiss the complaint is **DENIED**, without prejudice and with leave to renew should the plaintiff obtain counsel; and it is further

ORDERED, that the plaintiff shall have 60 days from the date of this order to retain counsel; and it is further

ORDERED, that in the event the plaintiff fails to obtain counsel or cannot represent himself and the Court concludes that *pro bono* counsel is unwarranted, the complaint will be dismissed without prejudice.

**SO ORDERED.**